IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 27, 2001 Session

## STATE OF TENNESSEE v. JOHN HENRY SPARROW, III

**Appeal from the Circuit Court for Dickson County**
**No. CR4260      Allen Wallace, Judge**

---

**No. M2000-3238-CCA-R3-CD - Filed April 16, 2002**

---

The Defendant, John Henry Sparrow, III, was convicted by a jury of attempted especially aggravated kidnapping, and sentenced to twelve years in the Department of Correction. In this direct appeal the Defendant raises three issues: whether the evidence is sufficient to support his conviction; whether the trial court made an improper comment on the evidence in its instructions to the jury; and whether the trial court erred in failing to instruct the jury on the lesser-included offense of attempted false imprisonment. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court. JERRY L. SMITH, J., filed an opinion concurring in results, in which NORMA MCGEE OGLE, J., joined.

Kenneth Quillen and Michael J. Flanagan, Nashville, Tennessee, for the appellant, John Henry Sparrow, III.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Dan Alsobrooks, District Attorney General; and Carey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On August 26, 1998, Carolyn Finch's two granddaughters, Josie Shepherd and Kaitlyn Christian, were visiting her at her apartment in Dickson County, Tennessee. Josie was about to turn four years old; her cousin Kaitlyn was eight years old. In the afternoon, Josie and Kaitlyn went to the playground at the apartment complex. A short time later, the two girls came rushing back into the apartment, slamming the door behind them. Ms. Finch testified that the girls were very frightened, upset and confused. When Ms. Finch asked them what was wrong, they told her that a man had tried to get them to leave the playground and go into the woods to play with snakes and turtles. She testified that the girls told her that, as they ran up the stairs to the apartment, the man had tried to grab Josie's foot. Ms. Finch subsequently contacted the police.

Kaitlyn testified at trial, explaining that she had been sitting on the playground fence while Josie was on the swings when a strange man came up behind her. She jumped off the fence and ran to stand next to Josie. The man asked them if they wanted to play snakes. Kaitlyn testified that she said, "no, how do you play?" She stated that the man told her, "you go in the woods and find all the snakes you can." She told the man that they didn't play with snakes. She stated that Josie then said, "come on, let's go inside." Kaitlyn testified that they ran to the stairs leading up to their grandmother's apartment and began going up the stairs. The man was "kind of jogging" toward the stairs, according to Kaitlyn, and when he got to the bottom of the stairs, commented, "I'm going to get you." She explained that he reached up and grabbed at Josie's ankle, but "barely touched it." Kaitlyn grabbed Josie and ran with her up the remaining steps and into the apartment.

Kaitlyn stated that she had never seen the man before and did not see him again. She was unable to identify him in court. She stated that the man at the playground had been wearing "a red Arizona T-shirt, a cap, [and] some baggy jeans." She also stated that "his eyes looked like they had soot on them."

Dustin Owen testified that he saw the Defendant walk by him at the apartment complex on August 26, 1998. Mr. Owen explained that soon thereafter he saw the Defendant drive by. Some days later he saw the Defendant in the complex again, driving his car. He stated that the Defendant pulled in front of one of the buildings, turned around, and drove back out. He described the car as old and black with some sort of shade covering the back window.

Jessica Wood testified that she saw the Defendant talking to Kaitlyn while Kaitlyn was sitting on the playground fence. She stated that he was wearing a red hat and a red shirt. About one or two weeks later, she saw the Defendant at the complex again, when he drove in, turned around, and drove back out. He was wearing a black cowboy hat and a black shirt. She looked at the car's license plate number, memorized it, and wrote it down. She gave the number to the police, and remembered it at trial as 5DD452.

Michael Hugel testified that he had seen the Defendant coming up from the woods near the complex a couple of times. Tracy Fuller testified that she saw the Defendant near the woods at the same time Kaitlyn and Josie were in the playground.

On September 3, 1998, Detective John Patterson stopped the automobile the Defendant was driving because the brake lights weren't working, and because the car matched the description of the one reported in connection with this incident. The car was a black Nissan with window louvers in the rear hatchback. The license plate number was 50DV452. Detective Patterson did not question or arrest the Defendant but did ask him where he lived. The Defendant told him where he lived, adding that he lived with his fiance, Edith Smith. Ms. Smith subsequently gave the police consent to search their apartment. During the search, the police recovered a red tee-shirt with the word "Arizona" on it, and a black cowboy hat.

Detective Patterson also showed a photographic lineup containing a photograph of the Defendant to several of the witnesses. Detective Patterson testified that Dustin Owen and Michael Hugel identified the Defendant in the lineup. However, Tracy Fuller and Jessica Wood did not identify the Defendant from the lineup.

On September 3, 1998, Detective Stewart Goodwin met with the Defendant and took his written statement. The statement reads as follows:

> On the way from work in Ashland City at about 5:00 p.m. I decided to check out the apartments in Charlotte on Route 48. I had rode through before checking them out. I parked my car in front of the building on the right. I walked down to the office to ask about lease info. but no one was there. So I decided to walk through the apts. to see what I could. I noticed several kids playing outside, but especially two young girls climbing a fence around the playground and jumping off the other side toward the woods. I then spoke to the children in a loud voice saying "don't jump off that fence because you may get hurt, break a leg or arm or something." One girl said "why." I asked if they had other games to play that were less dangerous. They asked "like what." I said I used to play a game called snake, would you like to play. They said how do you play. I said one person is the snake has to cover their eyes and count to 10 while the others (turtles) have to run and hide. [T]he snake then tries to catch or tag the turtles. The girls showed no interest in the game.
>
> I then asked while I was looking around if they had ever seen any snakes. One girl replyed [sic] that "My daddy has caught snakes." I then asked what he did to them. She replied "He killed them." I said that was crazy. The little girl said "I'm crazy." I said "How crazy are you?" She said "I would do anything." I said "thats pretty crazy allright." Then I started walking back around the apartment to go to my car. I saw the girls going home toward the front of the apartment. We passed again in the breezway. One of the girls kicked her leg at me from up above me in a playful gesture. So I returned playfully by swiping at her leg and sticking my toung[sic] out at her. [T]he two then ran up the rest of the stairs and slammed the apt. door. I kept walking to my car and left to go home. Yesterday, I turned around in the apt. parking lot to see other rental property I had passed about 3 miles before.

Edith Smith, who had been engaged to the Defendant in August 1998, testified on behalf of the Defendant. She explained that she and the Defendant had been living in Dickson at that time and

that she had been interested in moving closer to Ashland City; hence, the Defendant's interest in looking at the apartment complex.

Nancy Sparrow, the Defendant's mother, also testified on the Defendant's behalf. She explained that, as a teenager, the Defendant had played a game called "snakes and turtles."

## SUFFICIENCY

We first address the Defendant's contention that the evidence is not sufficient to support his conviction. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

An especially aggravated kidnapping is committed when the accused falsely imprisons a victim under thirteen years of age. See Tenn. Code Ann. § 39-13-305(a)(2). A false imprisonment is committed when the accused "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Id. § 39-13-302(a). An offense is attempted when the accused, "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Id. § 39-12-101(a)(3). However, "[c]onduct does not constitute a substantial step . . . unless the person's entire course of action is corroborative of the intent to commit the offense." Id. § 39-12-101(b). Thus, if the proof is sufficient to establish that the Defendant knowingly attempted to confine or remove Josie with the

intent to interfere substantially with her liberty, and that he took some action constituting a substantial step toward that end, then his conviction for attempted especially aggravated kidnapping is supported by sufficient evidence.

We note that, because no eyewitness to the alleged crime could identify the Defendant as the perpetrator, and because the Defendant did not confess to the crime, proof of his commission of the offense is based largely upon circumstantial evidence. Nevertheless, as this Court has previously acknowledged,

> circumstantial evidence alone may be sufficient to support a conviction. However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime."

State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citations omitted).

We find that the proof adduced at trial is sufficient to establish the Defendant's guilt of criminal attempt to commit especially aggravated kidnapping beyond a reasonable doubt. Kaitlyn testified that a strange man approached her and Josie at the playground from the woods, and told them about a game called "snakes" that involved going into the woods. Kaitlyn testified that the man followed them when they ran to the staircase, stated he was "going to get" them, and then tried to grab Josie's foot, actually touching her in the effort. The Defendant admitted to being on the premises and speaking to two young girls at the playground about a game involving snakes. The Defendant also admitted to being near the girls on the staircase and to "swiping" at one of the girls' legs as she was above him on the stairs. The Defendant did not live on the premises but claimed he was looking at the apartments because he was interested in possibly renting one. He explained his subsequent return to the complex as necessary to turn around to visit another complex three miles away.

The Defendant's intent in visiting the complex, speaking to the girls, and trying to grab Josie's foot, was a proper matter for the jury's determination. The jury concluded that the Defendant was attempting to falsely imprison Josie, and the evidence supports that conclusion. The evidence is sufficient to support the Defendant's conviction beyond a reasonable doubt, and this issue is without merit.

**TRIAL COURT'S ALLEGED COMMENT ON THE EVIDENCE**

We next address the Defendant's contention that the trial court improperly commented upon the evidence when it charged the jury. One of the instructions given by the judge to the jury related to the Defendant's statement to the police. Specifically, the trial court instructed the jury:

> Evidence of an admission has been introduced in this case. An admission is an acknowledgment by the defendant of certain facts which tend, together with other facts, to establish his guilt. It must be corroborated by other independent evidence to warrant and support a conviction.
>
> The court has permitted an admission of this evidence, but it remains your duty to decide if in fact such statements w[ere] ever made. If you do not believe it was made, you should not consider it. If you decide the statements were made, you must then judge the truth of the facts stated.
>
> In determining whether the statement is true, you should consider the circumstances under which it was made. You should also consider whether any of the other evidence before you tends to contradict the statement in whole or in part. You should not arbitrarily disregard any part of the statement, but should consider all of the statement you believe is true.
>
> If you find the statement is true, you are the sole judges of the weight that should be given it. You should consider it along with other evidence in the case in determining the defendant's guilt or innocence.

The Defendant claims that the court's characterization of his statement as an "admission" in the initial part of this instruction was an improper comment upon the evidence. We respectfully disagree.

The trial court did not err in characterizing the Defendant's statement as an "admission." Black's Law Dictionary defines "admissions" as, "[c]onfessions, concessions or voluntary acknowledgments made by a party of the existence of certain facts. More accurately regarded, they are statements by a party, or some one identified with him in legal interest, of the existence of a fact which is relevant to the cause of his adversary." Id. 47 (6th ed. 1990). The Defendant's statement meets this definition. Moreover, the statement is accurately referred to as an "admission" within the context of its admissibility as an exception to the hearsay rule. See Tenn. R. Evid. 803(1.2). This issue is without merit.

**LESSER-INCLUDED OFFENSES**

In his last issue the Defendant contends that the trial court committed reversible error in failing to instruct the jury on the offense of criminal attempt to commit false imprisonment, on the

grounds that this is a lesser-included offense of criminal attempt to commit especially aggravated kidnapping.[1] We disagree and find this issue to be without merit.

A trial court is under the mandatory duty to instruct the jury on a lesser-included offense, even if such an instruction is not requested, when "any evidence exists that reasonable minds could accept as to the lesser-included offense" and when that evidence is "legally sufficient to support a conviction for the lesser-included offense." State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999); see also Tenn. Code Ann. § 40-18-110(a). In Burns, our supreme court adopted a new three-part test for determining whether an offense is a lesser-include offense. See Burns, 6 S.W.3d at 466-67. Under the new test, which was largely derived from the Model Penal Code, an offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id.

As set forth above, the elements of especially aggravated kidnapping, as relevant to this case, are the false imprisonment of a victim under thirteen years of age. See Tenn. Code Ann. § 39-13-305(a)(2). Since especially aggravated kidnapping is defined in terms of false imprisonment, it is clear that criminal attempt to commit false imprisonment is a lesser-included offense of criminal attempt to commit especially aggravated kidnapping under part (a) of the Burns test. Our supreme

---

[1]The Defendant also argues that the jury should have been charged with false imprisonment. The Defendant was charged with criminal attempt to commit especially aggravated kidnapping, an inchoate offense. He was not charged with any choate offense. False imprisonment is a lesser-included offense of especially aggravated kidnapping, but it is not a lesser-included offense of criminal attempt to commit especially aggravated kidnapping, as charged in this case. This issue is therefore without merit.

court has recently held that, "[a]s a general rule, evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the <u>Burns</u> test. In proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater." <u>State v. Allen</u>, __ S.W.3d __, __, 2002 Tenn. LEXIS 76, *11-12 (Tenn. 2002).

Nevertheless, we find that the unique circumstances of this case require a departure from the general rule. <u>Burns</u> does not require a lesser-included offense instruction unless some evidence exists "that <u>reasonable minds</u> could accept as to the lesser-included offense." <u>Burns</u>, 6 S.W.3d at 469 (emphasis added). We simply cannot conclude that "<u>reasonable</u> minds" could have accepted the evidence in this case as establishing the lesser as opposed to the greater offense. Under the particular facts of this case, the only distinction between criminal attempt to commit false imprisonment and criminal attempt to commit especially aggravated kidnapping is that, for the greater offense, the victim must be under the age of thirteen. The uncontroverted proof at the trial of this case established that the victim was just shy of her fourth birthday at the time of the offense. Thus, the only way the jury could have convicted the Defendant of attempted false imprisonment, rather than attempted especially aggravated kidnapping, would have been to ignore the undisputed proof of the victim's age. "Reasonable minds" would not have done so. Accordingly, we find that the first step of the <u>Burns</u> analysis is not satisfied, and the trial court therefore committed no error in refusing to instruct the jury on the lesser-included offense of criminal attempt to commit false imprisonment.

Moreover, even if it was error for the trial court to have omitted the instruction,[2] we find the error to be harmless beyond a reasonable doubt. <u>See</u> <u>State v. Ely</u>, 48 S.W.3d 710, 727 (Tenn. 2001) (holding that, "when determining whether an erroneous failure to instruct on a lesser-included offense requires reversal, . . . the proper inquiry for an appellate court is whether the error is harmless beyond a reasonable doubt.") In applying this standard of review, we must determine "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." <u>Allen</u>, __ S.W.3d at __, 2002 Tenn. LEXIS 76, at *22. In making this determination, we must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." <u>Id.</u> If this Court finds at the conclusion of this examination that the proof of the element distinguishing the greater offense from the lesser was uncontested and supported by overwhelming and uncontroverted evidence, a determination that the error in failing to give an instruction on the lesser-included offense was harmless beyond a reasonable doubt is appropriate. <u>See id.</u> at *17-22.

On the facts of this case, we conclude that the trial court's failure to charge attempted false imprisonment appears beyond a reasonable doubt not to have affected the outcome of the trial,

---

[2] <u>See, e.g.</u>, <u>State v. Bowles</u>, 52 S.W.3d 69, 80 (Tenn. 2001) (holding that the trial court committed error in failing to instruct on the lesser-included offense of theft on a robbery charge because, "[i]n proving robbery, . . . the State also proved theft, for all of the elements of theft are included within the elements of robbery.")

because the proof of the victim's age was uncontested and supported by overwhelming and uncontroverted evidence. Simply put, a rational jury would not have concluded that the victim was thirteen years old rather than three years old. The Defendant therefore suffered no prejudice from the trial court's instructions, and, accordingly, we believe that any error in failing to give the instruction was harmless beyond a reasonable doubt.

Furthermore, because the jury would have had to ignore undisputed proof of the victim's age in order to convict the Defendant of the lesser offense, a conviction of the lesser could have resulted only from jury nullification.[3] As this Court has previously noted, however, "[a] defendant does not possess a constitutional right, whether pursuant to the due process provisions of the state and federal constitutions or embodied in those documents' guarantees of a right to a trial by an impartial jury, to place the issue of jury nullification before a jury in a criminal trial." Jerry Lee Craigmire v. State, No. 03C01-9710-CR-00440, 1999 WL 508445, at *13 (Tenn. Crim. App., Knoxville, July 20, 1999). Therefore, we have no difficulty concluding that any error by the trial court in failing to give the jury an opportunity to engage in nullification was harmless beyond a reasonable doubt. This issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

---

[3]A jury exercises its de facto power of nullification when it arrives at its verdict contrary to the applicable law and/or evidence of a case. See, e.g., State v. Taylor, 771 S.W.2d 387, 397 (Tenn. 1989).